FILED

DEC 2 3 2013

U.S. COURT OF
FEDERAL CLAIMS

ORIGINAL

# In the United States Court of Federal Claims

## Bid Protest

|  |  |
|---|---|
| HYPERION, INC.<br>1660 International Drive, Suite 470<br>McLean, Virginia 22102-4855 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  No. 13-  C<br>)  Judge |
| THE UNITED STATES, | )<br>) |
| Defendant. | )<br>)<br>) |

13-1012C

## POST-AWARD PROCUREMENT PROTEST COMPLAINT

Plaintiff, Hyperion, Inc., 1660 International Drive, Suite 470, McLean, Virginia

22102-4855 (Hyperion), a Virginia Corporation and a qualifying Small Business

(http://www.hyperioninc.com/, last visited December 18th, 2013), as and for its Post-

Award Procurement Protest Complaint against the Defendant, the United States, al-

leges as follows:

## INTRODUCTION

1.  This is a Post-Award Procurement Protest, a Civil Action alleging unreasona-

ble or irrational Federal Agency action, and clear and prejudicial violations of pro-

curement Statute and Regulation, these in connection with a Federal Agency Pro-

curement, the United States Department of the Army's Contracting Command—

Aberdeen Proving Ground's Solicitation Number W15P7T-13-R-D002 which was

awarded on Monday, December 16th, 2013 to Technical Communications Solutions

Corporation, 154 Aspen Road, Swampscott, Massachusetts 01907-2156 (TCSC) by a

Contracting Officer at the U.S. Army Contracting Command—Aberdeen Proving

Ground, 4401 Boothby Hill Avenue, Aberdeen Proving Ground, Maryland 21005-

3013. Solicitation Number W15P7T-13-R-D002 is being conducted as a total Small

9.103(b) (e-CFR December 16th, 2013), lack a rational basis and are not reasonable

nor do they reflect due consideration of all relevant factors; (b) a Declaration that

TCSC does not comply with definitive responsibility criteria set out in Solicitation

Number W15P7T-13-R-D002, this in violation of Federal Acquisition Regulation

9.104-2(a) (e-CFR December 16th, 2013) which authorizes Special Standards of "res-

ponsibility," *Advanced American Construction, Inc. v. United States*, 111 Fed. Cl. 205,

222 (2013); and (c) a Declaration that TCSC's Competitive Proposal complies neither

with the LIMITATIONS ON SUBCONTRACTING (NOV 2011) provision of Solicitation

Number W15P7T-13-R-D002 nor with 15 U.S.C. §§ 644(o), 657s(a), this also in vio-

lation of Federal Acquisition Regulation 19.601(d) (e-CFR December 16th, 2013). *The*

*Centech Group, Inc. v. United States*, 554 F.3d 1029, 1039-1040 (Fed. Cir. 2009), *aff'g*

*The Centech Group, Inc. v. United States*, 79 Fed. Cl. 562, 576 (2007) (compliance

with the Limitation on Subcontracting clause is a mandatory statutory requisite for

Award and a material Solicitation provision, a part of the Evaluation).

NATURE OF THE ACTION

3.  Hyperion seeks a proper review of this challenged Federal Agency Procure-

ment on the contemporaneous Administrative Record, 5 U.S.C. § 706(2)(A), and Hy-

perion seeks meaningful relief for clear and prejudicial procurement process errors

and for clear errors of judgment.

4.  Hyperion, a "responsible" public Contractor, and a qualifying Small Business

with a world-wide footprint, has been digging in the dirt and delivering information

technology infrastructure projects for South-West Asia since 2004; Hyperion's pre-

vious efforts include installations of information technology infrastructure in Iraq in

2005 and trenching, installation, and testing of fiber-optic networks and distribution

nodes at locations in Afghanistan from 2009 through 2012. Hyperion is an actual Of-

feror and an appropriate "interested party" under 28 U.S.C. § 1491(b)(1). Hyperion, as an actual Offeror, has a direct economic interest in the outcome of, and standing to pursue, this Post-Award Procurement Protest. *L-3 Communications Corp. v. United States*, 99 Fed. Cl. 283, 288 (2011), *citing Labatt Food Service, Inc. v. United States,* 577 F.3d 1375, 1380 (Fed. Cir. 2009); *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

5.  This Post-Award Procurement Protest is timely filed. Hyperion learned on Monday afternoon, December 16th, 2013 that Defendant's Department of the Army, U.S. Army Contracting Command—Aberdeen Proving Ground had awarded to TCSC the firm fixed-price Contract proposed by Solicitation Number W15P7R-13-R-D002. U.S. Army Contracting Command—Aberdeen Proving Ground conducted the Debriefing required by 10 U.S.C. § 2305(b)(5) on Friday, December 20th, 2013. This Post-Award Procurement Protest is filed on Monday, December 23rd, 2013.

sumptions . . . regarding areas that are not addressed in said proposal." Defendant DoD has breached these promises because TCSC's Competitive Proposal does not "conform" to Solicitation Number W15P7T-13-R-D002. As a result, Hyperion has wasted time and Competitive Proposal preparation costs. Hyperion has already incurred costs conducting site surveys in the Royal Hashemite Kingdom of Jordan (Defendant's DoD has not provided sensitive detailed site map and location information). Ultimately, Hyperion is being unlawfully denied a fair opportunity to compete for these Foreign Military Sales requirements, 22 U.S.C. § 2762.

8.   Hyperion is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., Hyperion is a private party and a Corporation which at the time this Post-Award Procurement Protest is filed has not more than 500 employees and whose net worth does not exceed $7,000,000 averaged over the past three years.

- 8 -

FACTUAL ALLEGATIONS

9. Solicitation Number W15P7T-13-R-D002 was issued on January 24th, 2013 with initial Competitive Proposals due March 11th, 2013. Solicitation Number W15P-7T-13-R-D002 was issued by the U.S. Army Contracting Command—Aberdeen Proving Ground, and four initial Competitive Proposals were received. Final Competitive Proposals were submitted in September 2013.

10. Award is made using the lowest-price, technically-acceptable Source Selection process. Solicitation Number W15P7T-13-R-D002, page 68 of 74. This Source Selection process requires that "award will be made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors." "Tradeoffs are not permitted," and "[p]roposals are evaluated for acceptability but not ranked using the non-cost/price factors." Federal Acquisition Regulation 15.101-2 (e-CFR December 16th, 2013). A technically acceptable Com-

- 9 -

petitive Proposal "clearly meets the minimum requirements of the solicitation." An "acceptable" Past Performance rating requires "a reasonable expectation that the offeror will successfully perform the required effort, or the offeror's performance record is unknown. In the context of acceptability/unacceptability, offerors determined to have unknown past performance shall be considered acceptable." Solicitation Number W15P7T-13-R-D002, page 71 of 74. This latter provision deeming "unknown" past performance to be considered "acceptable" implements 41 U.S.C. § 1126(b) which, when Offerors have "unknown" past performance, commands that "the offeror may not be evaluated favorably or unfavorably on the factor of past contract performance."

11. Even though 41 U.S.C. § 1126(b) and Solicitation Number W15P7T-13-R-D002 allow Offerors with "unknown" past performance to be considered "acceptable," Solicitation Number W15P7T-13-R-D002 nonetheless sets out definitive res-

- 10 -

ponsibility criteria which must be met by all Offerors. Federal Acquisition Regulation

9.104-2(a) (e-CFR December 16th, 2013) explains that Special Standards of "responsi-

bility" are "particularly desirable when experience has demonstrated that unusual ex-

pertise or specialized facilities are needed for adequate contract performance." These

are the definitive responsibility criteria about which all Offerors were warned:

> Due to the critical nature of this program as discussed in the Statement
> of Work (SOW) at Paragraphs 1.0 Scope, and 1.1 – Background, it is imper-
> ative that any resultant contract be awarded to an offeror that can success-
> fully meet the programs [sic] Period of Performance. Therefore, *offerors*
> *submitting proposals must provide verifiable supporting documentation that*
> *demonstrates that it* (and any participating primary subcontractors) has
> successfully completed a previous fiber optics network installation and con-
> figuration of similar scope to this instant requirement.

Solicitation Number W15P7T-13-R-D002, page 66 of 74 (Emphasis added).

> The *prime offeror must demonstrate that it has current or recent (within 3*
> *years) experience working in the Middle East, or developing nations and that*
> *such projects were completed successfully,* and;

- 11 -

Multiple successful fiber optic or similar system installations in an operational commercial or government controlled network, and;

An understanding of (first-hand or through subcontractors) the required processes for obtaining Right of Way permits for trenching and civil works projects, and;

Successful Long Haul (LH) Networks installation, configuration, test and training resulting in customer turn-over meeting commercial best practice/recommended standards . . . .

Solicitation Number W15P7T-13-R-D002, pages 72-73 of 74 (Emphasis added).

These definitive responsibility criteria are special "responsibility" requirements which are both specific and objective—they apply to the Offeror that will receive the Award promised by Solicitation Number W15P7T-13-R-D002, and here they are not satisfied by the performances of Subcontractors. *Advanced American Construction*, 111 Fed. Cl., at 223-224. Hyperion raised TCSC's non-conformance with these specific and objective definitive responsibility criteria during the Debriefing conducted on

- 12 -

Friday, December 20th, 2013. 10 U.S.C. § 2305(b)(5)(B)(vi). U.S. Army Contracting Command—Aberdeen Proving Ground denies that Solicitation Number W15P7T-13-R-D002 contains definitive responsibility criteria.

12. Solicitation Number W15P7T-13-R-D002 requires that Offerors furnish in their Competitive Proposals the details of their arrangements with proposed Subcontractors:

> Offerors shall provide an outline of how the effort required by the solicitation will be assigned for performance within the offerors [sic] corporate entity and among the proposed subcontractors. The information provided for the prime offeror and each proposed major subcontractor must include the entire company name, address, CAGE Code, DUNS Number and type of work to be performed by citing the applicable Government SOW paragraph number. This includes all subcontractors who will be providing critical hardware or whose subcontract is for more than 20% of the total proposed price.

Solicitation Number W15P7T-13-R-D002, page 67 of 74.

- 13 -

13. Solicitation Number W15P7T-13-R-D002 incorporates by reference, at page

38 of 74, the LIMITATIONS ON SUBCONTRACTING (NOV 2011) provision. This LIMITA-

TIONS ON SUBCONTRACTING (NOV 2011) provision requires that each Offeror:

> (c) By submission of an offer and execution of a contract, the Offe-
> ror/Contractor agrees that in performance of the contract in the case of a
> contract for—
>     (1) *Services (except construction)*. At least 50 percent of the cost of contract
> performance incurred for personnel shall be expended for employees of the
> concern.
>     . . . .

Federal Acquisition Regulation 52.219-14 (e-CFR December 16th, 2013).

14. Six fiber-optic long-haul communications links are to be trenched, installed,

and tested; seventeen fiber-optic last-mile communications links are to be trench-

ed, installed, and tested. Solicitation Number W15P7T-13-R-D002, Statement of

Work, page 8. Last-mile communications links are typically in urban areas requiring

asphalt and concrete cuts under existing pavements and parking lots. Detailed site

map and location information for trenching, installation, and testing of fiber-optic

long-haul and last-mile communications networks within the Royal Hashemite King-

dom of Jordan is not provided. Solicitation Number W15P7T-13-R-D002, pages 68-

69 of 74. As explained in one of the published Questions and Answers, all performan-

ce risk is placed on the successful Offeror/Contractor:

> Question: Reference Tables 1 and 2 of the SRD [Systems Requirements Document] lack detailed information regarding the terrain. Will the Government allow price adjustments after Contract award based on actual site conditions such as those requiring asphalt cuts, concrete cuts, the need for concrete encasements for Wadi crossings, etc.? If not, since there is no mandatory site visit and no description of the exact terrain involved, on what basis will the Government conduct this Acquisition such that Offeror pricing is formulated on a common understanding of the tasks required?

> Response: No. The decision to submit a proposal is a business decision. This effort is being solicited on a Firm-Fixed-Price Completion Basis only. It is the Offerors' responsibility to do the appropriate research using available information resources, assessing risks and proposing accordingly.

Solicitation Number W15P7T-13-R-D002, Amendment 0005, page 2 of 4.

15. TCSC is a Delaware Corporation wholly-owned by Philip Lagasse. TCSC

was started in 1999, and it exports telecommunication equipment and accessories

on a cash basis, with twenty-five percent of the agreed price due prior to shipment.

Philip Lagasse is the sole employee of TCSC, and TCSC operates from his resi-

dence. Publicly-available information does not demonstrate that TCSC has exper-

ience in engineering, procuring, installing, testing, training, and sustaining fiber-

optic cable facilities and networks, or in doing so in locations outside of the Conti-

nental United States. Attachment.

16. While Hyperion's evaluated Price is higher than the $8,622,068 Price for the

firm fixed-price Contract awarded to TCSC by U.S. Army Contracting Command—

Aberdeen Proving Ground, TCSC does not meet the definitive responsibility criteria

established by Solicitation Number W15P7T-13-R-D002, and, on information and

belief, TCSC's Competitive Proposal complies neither with the LIMITATIONS ON SUB-

CONTRACTING (NOV 2011) provision of Solicitation Number W15P7T-13-R-D002

nor with 15 U.S.C. §§ 644(o), 657s(a). As this Court has previously observed:

> Although the 20 percent self-performance requirement was designed to test bidder responsibility, the court's analysis cannot end here. The court has previously stated that information intended to reflect on bidder responsibility can render a bid nonresponsive if the information indicates that the bidder does not intend to comply with the material requirements of the IFB. *Essex Electro Engineers, Inc. v. United States*, 3 Cl. Ct. at 283, *See also Twehous Excavating Company, Inc.*, Comp. Gen. Dec. B-208189, 83-1 CPD ¶ 42 (1983); *Palmetto Enterprises, Inc.*, Comp. Gen. Dec. B-193843, 79-2 CPD ¶ 74 (1979), *modified on other grounds, K.P. Food Services*, B-198-427.2, 82-1 CPD ¶ 289 (1982); *Test Drilling Service Co.*, Comp. Gen. Dec. B-189682, 77-2 CPD ¶ 193 (1977). The "Performance of Work" clause was clearly a term or condition of the IFB. *In requiring the contractor to self-perform 20 percent of the work under the contract, the clause directly impacted bid price. The self-performance requirement limited the amount of work which could be subcontracted under the contract. A contractor can generally achieve considerable savings by subcontracting work to firms with lower cost structures who are capable of performing the project with less expense. As such, a contractor may gain a sizeable bid pricing advantage by subcontracting more work than its competitors.* Since compliance with the "Performance of Work" clause invariably affected bid price, the "Performance of Work" clause constitutes a material term of the IFB. *Vanderbilt Shirt Co.,*

- 17 -

> 69 Comp. Gen. 20 (1989). Although the clause was designed to help ensure that award was made to a qualified bidder, the 20 percent self-performance requirement was nevertheless part of the IFB and, therefore, the contractor was expected to comply with this requirement like any other material provision of the contract.

*Blount, Inc. v. United States*, 22 Cl. Ct. 221, 228 (1990) (Emphasis added). *Blount*

involved a proposed Contract for construction of a prison facility (the Federal

Supermax Prison in Florence, Colorado), and while percentage Limitations on Sub-

contracting the performance of construction Contracts differ from percentages for

service Contracts (they are less onerous), the point is the same—compliance with

the LIMITATIONS ON SUBCONTRACTING (NOV 2011) provision imposes substantial

costs, and a competitive disadvantage on those Offerors, as Hyperion, which comply

while others do not. This Court again observed the cost of compliance with the LIMI-

TATIONS ON SUBCONTRACTING (NOV 2011) provision in *The Centech Group, Inc. v.

United States*, 79 Fed. Cl. 562, 576 n. 21, n. 22 (2007).

- 18 -

FIRST CLAIM FOR RELIEF

17. Hyperion incorporates and re-alleges paragraphs numbers 1. through 16. hereinabove as if fully set forth herein.

18. U.S. Army Contracting Command—Aberdeen Proving Ground's decision to award to TCSC the Contract proposed by Solicitation Number W15P7T-13-R-D002 and U.S. Army Contracting Command—Aberdeen Proving Ground's affirmative determination that TCSC is presently a "responsible" public Contractor, Federal Acquisition Regulation 9.103(b) (e-CFR December 16th, 2013), lack a rational basis and are not reasonable nor do they reflect due consideration of all relevant factors, this as required by 5 U.S.C. § 706(2)(A) and 28 U.S.C. § 1491(b)(4).

SECOND CLAIM FOR RELIEF

19. Hyperion incorporates and re-alleges paragraphs numbers 1. through 16. hereinabove as if fully set forth herein.

- 19 -

20. TCSC does not comply with definitive responsibility criteria set out in Solicitation Number W15P7T-13-R-D002, this in violation of Federal Acquisition Regulation 9.104-2(a) (e-CFR December 16th, 2013) which authorizes the Special Standards of "responsibility" which are included in Solicitation Number W15P7T-13-R-D002.

THIRD CLAIM FOR RELIEF

21. Hyperion incorporates and re-alleges paragraphs numbers 1. through 16. hereinabove as if fully set forth herein.

22. TCSC's Competitive Proposal complies neither with the LIMITATIONS ON SUBCONTRACTING (NOV 2011) provision of Solicitation Number W15P7T-13-R-D002 nor with 15 U.S.C. §§ 644(o), 657s(a), this also in violation of Federal Acquisition Regulation 19.601(d) (e-CFR December 16th, 2013).

- 20 -

PRAYER FOR RELIEF

WHEREFORE, premises considered, Hyperion respectfully requests the Court

to grant Judgment for Hyperion in this Civil Action, and to Order the following

relief:

1.(a) a Declaration that Defendant DoD's U.S. Army Contracting Command—

Aberdeen Proving Ground's decision to award to TCSC the Contract proposed by

Solicitation Number W15P7T-13-R-D002 and U.S. Army Contracting Command—

Aberdeen Proving Ground's affirmative determination that TCSC is presently a "res-

ponsible" public Contractor, Federal Acquisition Regulation 9.103(b) (e-CFR De-

cember 16th, 2013), lack a rational basis and are not reasonable nor do they reflect due

consideration of all relevant factors; (b) a Declaration that TCSC does not comply

with definitive responsibility criteria set out in Solicitation Number W15P7T-13-R-

D002, this in violation of Federal Acquisition Regulation 9.104-2(a) (e-CFR Decem-

ber 16th, 2013) which authorizes these Special Standards of "responsibility;" and (c) a Declaration that TCSC's Competitive Proposal complies neither with the LIMITATIONS ON SUBCONTRACTING (NOV 2011) provision of Solicitation Number W15P7T-13-R-D002 nor with 15 U.S.C. §§ 644(o), 657s(a), this also in violation of Federal Acquisition Regulation 19.601(d) (e-CFR December 16th, 2013); and

2.  a Permanent Injunction compelling Defendant DoD's U.S. Army Contracting Command—Aberdeen Proving Ground to terminate the Contract proposed by Solicitation Number W15P7T-13-R-D002 and awarded to TCSC on Monday, December 16th, 2013; and

3.  such further and other relief as the Court may deem just and proper.

Respectfully submitted,

Cyrus E. Phillips IV

- 22 -

Virginia State Bar Number 03135

December 23rd, 2013

ALBO & OBLON, L.L.P.
Courthouse Plaza
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201-3331

| | |
|---|---|
| Telephone: | (703) 562-3382 |
| Facsimile: | (703) 312-0415 |
| Mobile: | (703) 819-5944 |
| Electronic Mail: | lawyer@procurement-lawyer.com |

Attorney of record for Plaintiff,
Hyperion, Inc.

- 23 -



**Decide with Confidence**

## Business Information Report

📄 Print this Report

Report Printed: DEC 17 2013
**In Date**

### BUSINESS SUMMARY

**TECHNICAL COMMUNICATIONS SOLUTIONS CORP**
  TCSC
  T C S C
  TCS
**154 Aspen Rd**
**Swampscott, MA 01907**

This is a **single** location.

| | |
|---|---|
| **Telephone:** | 781 598-4100 |
| **Chief executive:** | H A PHILIP LAGASSE, PRES |
| **Year started:** | 1999 |
| **Employs:** | 1 |
| **History:** | CLEAR |
| **SIC:** | 5999 |
| **Line of business:** | Operates as an exporter of telecommunications equipment |

**D-U-N-S Number:**   03-400-4080

**D&B Rating:**   --
**D&B Viability Rating:**   **68BK**

**D&B PAYDEX®:**

**D&B PAYDEX: 40**
When weighted by dollar amount, payments to suppliers average 60 days beyond terms.



**High Risk**                    **Low Risk**

Based on up to 24 months of trade.

### SPECIAL EVENTS

03/08/2013
The Chief Executive Officer is now H A PHILIP LAGASSE, Pres.

### SUMMARY ANALYSIS

#### D&B Rating:--

The blank rating symbol should not be interpreted as indicating that credit should be denied. It simply means that the information available to D&B does not permit us to classify the company within our rating key and that further enquiry should be made before reaching a decision. Some reasons for using a "-" symbol include: deficit net worth, bankruptcy proceedings, insufficient payment information, or incomplete history information. For more information, see the D&B Rating Key.

Below is an overview of the company's rating history since 08/30/01:

| D&B Rating | Date Applied |
|---|---|
| -- | 08/30/01 |

The Summary Analysis section reflects information in D&B's file as of December 16, 2013.

**VIABILITY RATING ANALYSIS**

The D&B Viability Rating uses D&B's proprietary analytics to compare the most predictive business risk indicators and deliver a highly reliable assessment of the probability that a company will no longer be in business within the next 12 months.

**D&B VIABILITY RATING:68BK**

**D&B VIABILITY RATING COMPONENTS:**

**VIABILITY SCORE:**

Viability Score is the first of four components within the D&B Viability Rating. It is a high-level risk indicator that assesses the probability that a company will no longer be in business within the next 12 months, compared to all US businesses within the D&B database. A business is no longer viable when it goes out of business, becomes dormant/ inactive or files for bankruptcy. The ranking ranges from 1 to 9 where 9 reflects the highest probability of becoming no longer viable and 1 reflects the lowest probability.

**NOTE:** The Viability Score is best used when ranking all businesses within your portfolio based on the probability of becoming no longer viable.

**Viability Score: 6**



**Compared to ALL US Business within D&B Database:**

- **Level of risk:** Moderate Risk
- **Business ranked 6 have a probability of becoming no longer viable:** 13%
- **Percentage of business ranked 6:** 30%
- **Across all US business, the average probability of becoming no longer viable:** 14%

**PORTFOLIO COMPARISON:**

Portfolio Comparison is the second of four components within the D&B Viability Rating. Portfolio Comparison is a more detailed risk indicator that assesses the viability of a company compared to similar businesses within the same model segment which are determined by the amount and type of data available. A business is no longer viable when it goes out of business, becomes dormant/ inactive or files for bankruptcy. Every business within the D&B database falls into 1 of the following 4 profile segments:

1. Available Financial Data.
2. Established Trade Payments.
3. Limited trade Payments.
4. Firmographics and Business Activity.

The Portfolio Comparison ranking ranges from 1 to 9 where 9 reflects the highest probability of becoming no longer viable and 1 reflects the lowest probability.

**NOTE:** The Portfolio Comparison is best used when analyzing the individual risk level of a company compared to businesses within the same profile segment.

**Portfolio Comparison: 8**



**Compared to all Business within the same MODEL SEGMENT:**

- **Model Segment:** Established Trade Payments
- **Level of risk:** High Risk

- **Business ranked 8 within this model segment have a probability of becoming no longer     viable:** 11%
- **Percentage of business ranked 8 within this model segment:** 13%
- **Within this model segment, the average probability of becoming no longer viable:** 5%

## DATA DEPTH INDICATOR:

Data Depth Indicator is the third of four components within the D&B Viability Rating. The Depth of Data Indicator presents the level of data available for a company. Data depth assists in the assessment of whether a company will no longer be viable and includes the following:

1. Financial Attributes.
2. Commercial Trading Activity.
3. Firmographics.

The level of data is represented by a letter on a scale of A - G where A reflects the greatest level of predictive data to make a highly reliable assessment of company viability, and G reflects a minimal level of data which can be considered descriptive. The more comprehensive the data, the more precise the overall D&B Viability Rating becomes. If a company has been placed in the Special Category, a letter ranging from H-M will be assigned to identify the specific reason.

**Data Depth:   B**

**Data Depth Indicator Details:**

- Rich Firmographics
- Extensive Commercial Trading Activity
- Basic Financial Attributes

Greater data depth can increase the precision of the D&B Viability Rating assessment.

You have the ability to influence the confidence of the viability assessment by asking the business to report more information to D&B at https://iupdate.dnb.com

## COMPANY PROFILE:

Company Profile is the fourth of four components within the D&B Viability Rating. The Company Profile describes a company based on a combination of 4 categories:

1. Financial Data.
2. Trade Payments.
3. Company Size.
4. Years in Business.

A company is characterized by a letter which ranges from A - X; with each letter representing a combination of the 4 categories that make up the company's profile. For example, A describes a company with a comprehensive level data, which has been in business 5+ years, with 50+ employees or $500K+ in Sales, while X reflects a company with a minimal data, in business < 5 years, with < 10 employees or < $10K in Sales. Y and Z reflect a Branch and Subsidiary, respectively.

**Company Profile:   K**

**Company Profile Details:**

- **Financial Data:**Not Available
- **Trade Payments :** Available: 3+Trade
- **Business Size:** Small: Employees: <10 or Sales: <$10K or Missing
- **Years in Business:**Established (Established: 5+ )

## CUSTOMER SERVICE

Need help? Call Customer Service at (800) 932-0025, Monday through Friday, 8:00 AM to 6:00 PM Local Time.

## HISTORY

The following information was reported **12/14/2013**:

**Officer(s):**     H A PHILIP LAGASSE, PRES

**DIRECTOR(S):**   THE OFFICER(S)

Business is a Delaware corporation. As of August 30, 2001, corporate details were unavailable.

Business started 1999 by Philip Lagasse. 100% of capital stock is owned by Philip Lagasse.

H A PHILIP LAGASSE. Work history unknown.

## OPERATIONS

12/14/2013

**Description:** Operates as an exporter of telecommunication equipment and accessories.

Sells for cash 25% balance prior to shipments. Has 3 account(s). Uses lettters of credit. Sells to commercial concerns & government agencies. Territory : United States & Canada.

**Employees:**  1 which includes officer(s).

**Facilities:**  Operates from residence of principal.

## SIC & NAICS

**SIC:**
Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.

The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

59990600     Telephone and communication
             equipment

**NAICS:**
443142  Electronics Stores

## D&B PAYDEX

The D&B PAYDEX is a unique, dollar weighted indicator of payment performance based on up to 3 payment experiences as reported to D&B by trade references.

**D&B PAYDEX: 40**
When weighted by dollar amount, payments to suppliers average 60 days beyond terms.



High Risk                                    Low Risk

Based on up to 24 months of trade.

When dollar amounts are not considered, then approximately 0% of the company's payments are within terms.

## PAYMENT SUMMARY

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

| | Total Rcv'd (#) | Total Dollar Amts ($) | Largest High Credit ($) | Within Terms (%) | Days Slow <31 31-60 61-90 90> (%) | | | |
|---|---|---|---|---|---|---|---|---|
| **Top industries:** | | | | | | | | |
| Nonclassified | 1 | 100 | 100 | - | - | 100 | - | - |
| **Other payment categories:** | | | | | | | | |
| Cash experiences | 2 | 0 | 0 | | | | | |
| Payment record unknown | 0 | 0 | 0 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collections:** | | | | | | | | |
| With D&B | 0 | 0 | | | | | | |
| Other | 0 | N/A | | | | | | |
| Total in D&B's file | 3 | 100 | 100 | | | | | |

The highest **Now Owes** on file is $100

The highest **Past Due** on file is $100

D&B receives over 600 million payment experiences each year. We enter these new and updated experiences into D&B Reports as this information is received.

**PAYMENT DETAILS**

**Detailed Payment History**

| Date Reported (mm/yy) | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 11/13 | (001) | 0 | 0 | 0 | Cash account | 1 mo |
| 10/13 | Slow 60 | 100 | 100 | 100 | | |
| 06/13 | (003) | 0 | | | Sales COD | 6-12 mos |

Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of disputes over merchandise, skipped invoices etc.

Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.

**FINANCE**

**12/14/2013**

On 03/07/2013, H A Philip Lagasse, Pres, confirmed company name, address, principals, annual sales and operational information using D&B's web-based update method (iUpdate) at www.dnb.com.

**PUBLIC FILINGS**

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

**UCC FILINGS**

| | |
|---|---|
| **Collateral:** | Negotiable Instruments and proceeds - Inventory and proceeds - Accounts receivable and proceeds - Account(s) and proceeds - and OTHERS |
| **Type:** | Original |
| **Sec. party:** | BOSTON PRIVATE BANK & TRUST COMPANY, BOSTON, MA |
| **Debtor:** | TECHNICAL COMMUNICATIONS SOLUTIONS CORPORATION |
| **Filing number:** | 4280496 3 |
| **Filed with:** | SECRETARY OF STATE/UCC DIVISION, DOVER, DE |
| **Date filed:** | 10/06/2004 |
| **Latest Info Received:** | 10/27/2004 |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

**GOVERNMENT ACTIVITY**

**Activity summary**

| | |
|---|---|
| Borrower (Dir/Guar): | NO |
| Administrative debt: | NO |
| Contractor: | NO |
| Grantee: | NO |
| Party excluded from federal program(s): | NO |

**Possible candidate for socio-economic program consideration**

| | |
|---|---|
| Labor surplus area: | N/A |
| Small Business: | YES (2013) |
| 8(A) firm: | N/A |

The details provided in the Government Activity section are as reported to Dun & Bradstreet by the federal government and other sources.

### bing Maps

**154 Aspen Rd, Swampscott, MA 01907**

My Notes

On the go? Use **m.bing.com** to find maps, directions, businesses, and more





⚠ Bird's eye view maps can't be printed, so another map view has been substituted.



Address **154 Aspen Road**

Address is approximate

