# In the United States Court of Federal Claims

No. 13-1012C

(Filed: September 29, 2014)

| | |
|---|---|
| **HYPERION, INC.,** | ) Application by a prevailing plaintiff for |
| | ) an award of attorneys' fees and expenses |
| Plaintiff, | ) pursuant to the Equal Access to Justice |
| | ) Act, 28 U.S.C. § 2412; no substantial |
| v. | ) justification for the government's |
| | ) position; reduction in an attorney's hours |
| **UNITED STATES,** | ) for work ordinarily done by a paralegal |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

Cyrus E. Phillips IV, Albo & Oblon L.L.P., Arlington, Virginia, for plaintiff.

Ryan M. Majerus, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Stephanie Magnell, Trial Attorney, U.S. Army Legal Services Agency, Fort Belvoir, Virginia.

**OPINION AND ORDER**

LETTOW, Judge.

A judgment on the administrative record was issued in favor of plaintiff, Hyperion Inc., in this post-award bid protest contesting a contract awarded by the United States Army ("the Army" or "the government") to provide installation and infrastructure upgrades to fiber optic cable networks in the Hashemite Kingdom of Jordan ("Jordan").  *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 557 (2014).  Now before the court is plaintiff's application for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and a Bill of Costs submitted pursuant to Rule 54(d) of the Rules of the Court of Federal Claims ("RCFC").  *See* Pl.'s Claim for Att'y's Fees and Related Nontaxable Expenses ("Pl.'s Mot."), ECF No. 39; Pl.'s Bill of Costs, ECF No. 38.  The government opposes an award of attorneys' fees and expenses, arguing that its position in the underlying litigation was substantially justified.  *See* Def.'s Opp'n to Pl.'s Appl. For Fees and Costs Pursuant to the Equal Access to Justice Act ("Def.'s Opp'n") at 2, ECF No. 42.  The government alternatively

contends that if the court were to award fees, a clerical rate rather than an attorney rate should be applied to hours spent by plaintiff's counsel on tasks that the government claims are administrative in nature. *Id*. at 3.

## BACKGROUND

The Army's solicitation sought proposals to install fiber optic cable for use by the Jordanian Armed Forces and the Royal Jordanian Air Force. *Hyperion*, 115 Fed. Cl. at 544. According to the solicitation's Statement of Work, the objective of this solicitation was a continuation of efforts previously undertaken to upgrade Jordan's infrastructure to allow for C4ISR capability. *Id.*[1] The Army's procurement was a small business set-aside. The solicitation incorporated 48 C.F.R. ("FAR") § 52.219-14, "Limitations on Subcontracting," which requires all offerors submitting a proposal in response to a solicitation designated as a small business set-aside for a contract of the type the Army sought, to self-perform at least 50 percent of all labor costs. *Id.* at 545. The solicitation was also issued pursuant to FAR § 15.101-2, specifying that the lowest-priced-technically-acceptable ("LPTA") proposal would receive the award. *Id*. at 546. Overall technical acceptability was determined based on two factors: "technical" capability and "past performance." *Id*. To attain overall technical acceptability, an offeror had to receive a rating of "Acceptable" for each factor. *Id*. The Army received four timely proposals, *i.e.*, from Hyperion, ["Offeror A"], ["Offeror B"], and Technical Communications Solutions Corporations ("TCSC"). *Id*. at 546-47. All were initially judged technically unacceptable. *Id*. at 547. After being given the opportunity to cure, each of the four submitted proposals deemed to be technically acceptable, and, after submitting the lowest-priced proposal, TCSC was awarded the contract. *Id*. at 548-49. Hyperion filed a protest in this court, alleging that [Offeror A], [Offeror B], and TCSC submitted proposals that facially demonstrated they would be unable to comply with FAR § 52.219-14, "Limitations on Subcontracting." *Id.* at 549. Hyperion argued that the Army's decision to declare the three other offers technically acceptable despite their deficiencies was unreasonable and prejudicial to Hyperion and requested that the court set aside the award to TCSC. *Id*.

On the merits, the court found that because the solicitation incorporated FAR § 52.219-14, limiting subcontracting, the Army acted unreasonably in finding that TCSC, [Offeror A], and [Offeror B] submitted technically acceptable proposals. *Hyperion*, 115 Fed. Cl. at 556. The court in its analysis noted that a proposal that "on its face, leads an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation is technically unacceptable and may not form the basis of an award." *Id*. at 551 (*quoting Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 (Fed. Cir. 2009)). The court observed that the government failed to inquire into the spreadsheets submitted by TCSC or to question TCSC's ability to comply with the pertinent limits on subcontracting. *Id*. at 553. Ultimately, upon its own inquiry, the court determined that TCSC miscategorized subcontractor labor costs as a material cost and TCSC would be unable to comply with the limitations on subcontracting by providing at least 50% of the overall labor costs itself. Similarly, the court found that the proposals submitted by [Offeror A] and [Offeror B] also failed to demonstrate that the offerors would comply with the

---

[1] "C4ISR is an acronym that stands for 'Command, Control, Communications, Computers, Intelligence, Surveillance, Reconnaissance.'" *Hyperion*, 115 Fed. Cl. at 544 n.4.

50% self-performance requirement. *Id*. at 553-55. The court concluded that Hyperion sufficiently demonstrated that it was prejudiced in the procurement process by the Army's unreasonableness in finding the offers submitted by TCSC, [Offeror A], and [Offeror B] to be technically sufficient. *Id.* at 556. The Army's award to TCSC was set aside. *Id.* at 557.

After the court's judgment became final, on June 17, 2014, Hyperion filed its motion for attorneys' fees in the amount of $30,252.64 and expenses of $441.26. With the submission of the government's opposition and Hyperion's reply, the disputed matters have been fully briefed and are now ready for disposition.

## ANALYSIS

### I. Attorneys' Fees and Other Expenses

Congress enacted EAJA "'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96–1005, at 9 (1980)). EAJA creates a mechanism that allows a qualifying party to receive reasonable attorneys' fees and expenses for prevailing in litigation against the United States. *Id*. at 406-07; *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 155 n.1 (1990). A party must satisfy five criteria to obtain such an award: (1) The applicant must be a "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified"; (3) no "special circumstances" may exist which would render an award unjust; (4) an EAJA fee application must be submitted to the court within thirty days of final judgment in the action and be supported by an itemized statement; and (5) if the qualifying party is a corporation or other organization, it must have had less than or equal to $7,000,000 in net worth or 500 employees at the initiation of the litigation. *See Jean*, 496 U.S. at 158 (citing and quoting 28 U.S.C. § 2412(d)(1), (2)); *KWV, Inc. v. United States*, 113 Fed. Cl. 534, 537 (2013); *Metropolitan Van & Storage, Inc. v. United States*, 101 Fed. Cl. 173, 185 (2011). The plaintiff bears the burden of demonstrating that it meets these requirements, *Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 496 (2005), except that the government bears the burden of proof respecting the second criterion, *i.e.*, establishing that its position was substantially justified. *See White v. Nicholson*, 412 F.3d 1314, 1316 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006), *appeal dismissed*, 226 Fed. Appx. 998 (Fed. Cir. 2007); *Al Ghanim Combined Grp.*, 67 Fed. Cl. at 496.

The first, third, and fourth of these criteria are uncontested in this instance. The government does not challenge Hyperion's assertions that it was a prevailing party, that no special circumstances would render an award unjust, and that Hyperion's EAJA application was timely filed. *See* Def.'s Opp'n; *see also* Pl.'s Mot. at 2-3. However, the government disputes the other two criteria, arguing that Hyperion's application failed to affirmatively establish that it met the net-worth or employee-count requirements and maintaining that the government's position prior to and during litigation was substantially justified. Def.'s Opp'n at 2-14. The government alternatively argues that if the court finds that its position was not substantially justified and decides to award fees and expenses, then Hyperion's recovery should be reduced by restricting the number of hours of work performed to those sufficiently documented and limiting

3

Hyperion's recovery by applying a clerical hourly rate, rather than a higher attorney rate, to administrative work performed by Hyperion's counsel. *Id*. at 14-21.

*A. Eligible Party Status under EAJA*

A prevailing party bears the burden of establishing its eligibility for an award under EAJA. *Lion Raisins, Inc. v. United* States, 57 Fed. Cl. 505, 508 n.2 (2003). After the applicant makes a showing of eligibility, "the burden of proof then shifts to the government to show that its position was 'substantially justified or that special circumstances make an award unjust.'" *Doe v. United States*, 54 Fed. Cl. 337, 340 (2002) (quoting *Citizens Coalition v. Euclid*, 537 F. Supp. 422, 424 (N.D. Ohio 1982), *aff'd*, 717 F.2d 964 (6th Cir. 1983)), *appeal dismissed*, 55 Fed. Appx. 550 (Fed. Cir. 2003)). To be eligible, the plaintiff must have had a net worth of less than $7 million or employed fewer than 500 employees at the time of filing the action. 28 U.S.C. § 2412(d).[2] The plaintiff "bears responsibility for offering supporting documentary evidence" that it meets these requirements. *Al Ghanim Combined Grp.*, 67 Fed. Cl. at 498.

The government contends that Hyperion failed to sufficiently establish its size and net worth because the sole evidence of these criteria that it submitted to the court was an affidavit signed by Hyperion's president. Def.'s Opp'n at 6-7. The government argues that Hyperion's president's declaration "has merely alleged eligibility" rather than providing sufficient probative evidence to make a showing of eligibility. *Id*. at 7. Relying on this court's decision in *Fields v. United States*, 29 Fed. Cl. 376, 382 (1993), the government asserts that conclusory affidavits and unaudited, qualified balance sheets are not enough to enable the court to ascertain a plaintiff's net worth. *Id*. at 5.

With its reply, Hyperion submitted a Supplemental Declaration disclosing additional information that affirmatively establishes that Hyperion meets the requisite criteria for eligibility to receive an award under EAJA. *See* Pl.'s Brief in Support of Reply to Def.'s Response to Pl.'s Claim for Atty's Fees and Related Nontaxable Expenses ("Pl.'s Reply"), appended Supplemental Decl. of Paul Milo, Jr., & attached financial statements for 2010 through 2013, ECF No. 43. Hyperion's audited financial statements for the period of 2010 through 2012 declare a net worth of less than one million dollars during each of those years. *Id*. The unaudited Financial Statement for 2013 shows a net deficit. *Id*. In addition, Hyperion's "Time by Name" record for December 2013 establishes that the company had 27 employees in that month, well below the 500 employee limit. *Id*. Even though the audited financial information was submitted with Hyperion's reply rather than with its initial application, the supplementation is appropriate. *See, e.g.*, *Scarborough*, 541 U.S. at 416-19, 423 (holding that the "relation-back" principle permits an EAJA applicant to supplement or amend a timely but incomplete application); *Bazalo v. West*, 150 F.3d 1380, 1383 (Fed. Cir. 1998) ("[W]hile the time limitation [on filing an EAJA application] should be strictly met, the content of the EAJA application should be accorded some flexibility."); *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 700 n.3 (2010) (applying *Scarborough* and *Bazalo)*.

---

[2] Net worth under EAJA is calculated by subtracting total liabilities from total assets. *Lion Raisins*, 57 Fed. Cl. at 511.

4

Consequently, while the government may have been correct in observing that the information contained in Hyperion's initial application was insufficient, Hyperion has ultimately met its burden of establishing eligibility to recover fees and costs under EAJA.

*B. Substantial Justification*

To establish that its position was "substantially justified," the government bears the burden of showing that its position was "'justified in substance or in the main' – that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988). In its analysis, the court does not inquire into the government's position on every individual issue in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999), *appeal dismissed*, 232 F.3d 910 (Fed. Cir. 2000) but rather "make[s] a judgment call whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))). The government's position may be substantially justified even if ultimately incorrect. *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001). The appropriate inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561). The substantial justification standard requires less than winning the case and more than being "merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

The government asserts that its position was substantially justified for two reasons. First, the government contends that its position in litigation to oppose Hyperion's standing to bring the underlying action had a reasonable basis in fact and law because Hyperion was not the second-lowest bidder responding to the solicitation and therefore arguably could not demonstrate that it was prejudiced by a significant error in the procurement process. Def.'s Opp'n at 9-12. Because Hyperion was the fourth-lowest bidder in a LPTA procurement, the government had contended that Hyperion had no "substantial chance" of being awarded the contract, especially given Hyperion's price, which was substantially higher than the price proposed by TCSC. *Id*. Second, the government posits that that its position was substantially justified because the omissions in proposals submitted by [Offeror A] and [Offeror B] of any statement of intent to comply with the subcontracting limitations of FAR § 52.219-14 did not render their proposals defective. Instead, based on Federal Circuit precedent, the government argues that it had reason to believe that compliance with subcontracting limitations for those offerors would have been a matter for contract administration, governed by the Contract Disputes Act, rather than an appropriate subject for consideration in a bid protest. *Id*.

Both of the government's arguments were found to be unavailing. As the court explained in its decision on the merits, in the particular factual circumstances of this case, Hyperion was sufficiently prejudiced to satisfy the requirement of standing. But for the government's error in deeming the other three offers technically acceptable, Hyperion had a substantial chance of receiving the award. *Hyperion*, 115 Fed. Cl. at 556. Indeed, an analysis of the offers showed

5

that it was the only qualifying offeror.  Moreover, the case on the merits was appropriately decided as a bid protest rather than as an issue of contract administration because the technical acceptability of an offer was a prerequisite to the government's award of a contract.  *Id*. at 551-52 (citing *Centech*, 554 F.3d at 1038, and *Blount, Inc. v. United States*, 22 Cl. Ct. 221, 228-30 (1990)).

Notably, the government's arguments focus on the government's positions during the underlying litigation and avoid addressing the investigation that the Army conducted of the offers before making an award.  The investigation conducted by the Army in declaring the offers submitted by TCSC, [Offeror A], and [Offeror B] technically acceptable was markedly superficial.  As the court noted in its opinion on the merits, in the spreadsheets accompanying TCSC's proposal, subcontractor labor costs were miscategorized under the label of "civil work" as material costs.  *Hyperion*, 115 Fed. Cl. at 552-53.  This miscategorization made it "readily apparent, on the face of TCSC's proposal" that it would not and could not comply with the subcontracting limitations and "should have led the Army to question TCSC's ability to comply with the limitation on subcontracting in what was a labor-intensive contract."  *Id*.  Similarly, the offers submitted by [Offeror A] and [Offeror B] suffered facial deficiencies.  [Offeror A]'s proposal was opaque regarding which positions in Jordan would be filled by [Offeror A]'s employees and which would be filled by its subcontractor's employees, making it highly unlikely that [Offeror A] would comply with the 50% self-performance requirement.  *Id*. at 553-55.  [Offeror B]'s proposal contained a substantial discrepancy between its actual proposed price for trenching and laying and its subcontracting costs.  *Id*. at 555-56.

Remarkably, a review of the administrative record revealed that the Army failed to make *any* inquiry into each offeror's ability to comply with the limitation-on-subcontracting provision of the FAR, a prerequisite for the offerors' proposals to be considered technically acceptable.  The government's bare assertion that the agency "rationally" found that all four proposals were acceptable has no support.  Def. Opp'n. at 10.  Rather, the government has offered "no plausible defense, explanation, or substantiation" for the Army's failure to inquire into each offeror's ability to comply with the solicitation's subcontracting requirements.  *Griffin & Dickinson v. United States*, 21 Cl. Ct. 1, 6-7 (1990) (citing *Beta Sys., Inc. v. United States*, 866 F.2d 1404, 1406 (Fed. Cir. 1989)).

In sum, the contracting officer's failure to inquire into each party's ability to meet the limitation-on-subcontracting provision of the FAR was arbitrary.  Therefore, the government's position was not substantially justified and an award of attorneys' fees and expenses pursuant to EAJA is appropriate.

*B. Attorneys' Fees*

Hyperion requests attorneys' fees amounting to $30,252.64, reflecting 160.5 hours of work by its counsel of record in the period from December 17, 2013 through April 17, 2014 at a rate of $188.49 per hour.  Pl.'s Mot. at 5-7.[3]  In addition, Hyperion requests fees for an additional

---

[3]The hourly rate was calculated by applying a cost-of-living adjustment to the $125 hourly rate cap imposed under 28 U.S.C. § 2412(d)(2)(A).  Hyperion used a mid-point of

6

7.3 hours of work in June 2014 on the application for fees under EAJA and 5.2 hours in August 2014 preparing the Reply. Pl.'s Reply at 7-8. In total, Hyperion effectively has requested $32,608.77, the product of total hours worked, 173.0, multiplied by the rate of $188.49 per hour. Hyperion submitted invoices for these hours. Nonetheless, the total number of hours reflected in the attached invoices is actually 157.7 hours, not 160.5 hours as stated by Hyperion. Therefore, the total number of hours including the hours from June 2014 and the hours spent preparing the Reply should be 170.2, and the total requested sum should be $32,081.00.

The government does not contest the adjusted attorney rate of $188.49 per hour, but it does challenge the number of hours of work to which an attorney's billable rate should apply. Def.'s Opp'n at 15-17. Based on the invoices submitted by Hyperion's counsel, the government identifies a number of tasks that it deems "clerical" in nature and maintains that those hours should be charged at a lower clerical billable rate of $26.83 per hour. *Id*. at 17.[4]

When determining the proper rate of recovery under EAJA, the government is correct in its assertion that it is generally appropriate to distinguish work typically performed by attorneys from work customarily completed by non-lawyers. *Cf. Hopi Tribe*, 55 Fed. Cl. 81, 99 (2002) ("If a task can easily be performed by a higher paid and a lower paid employee, the court thinks it unreasonable to choose the former." (quoting *Hines v. Secretary of Dep't of Health & Human Servs.*, 22 Cl.Ct. 750, 756 (1991))). Hyperion's counsel's invoices list several tasks that ordinarily would be performed by a paralegal rather than an attorney, including, for example, "prepar[ing] paper copies for filing," and "complet[ing] and fil[ing] Application for Access." Pl.'s Mot. at Attach. 2; *see also* Def.'s Opp'n at App. A. For these and other similar tasks, a paralegal rate of $105.00 is more appropriate than the rate for Hyperion's counsel.[5] Therefore,

---

February 2014 and compared the Bureau of Labor Statistics' Consumer Price Index for All Urban Consumers ("CPI-U") for March 1996 (when the latest adjustment of the statutory cap took effect) with the CPI-U Index for February 2014. Therefore, $188.49 is the result of multiplying $125.00, the hourly rate cap, by 234.781/155.7, the appropriate cost-of-living adjustment. *See Chiu*, 948 F.2d at 722 n.10 (noting that "in an appropriate case," the court may use "a single mid-point adjustment factor applicable to services performed before and after the mid-point"); *Ulysses Inc. v. United States*, __ Fed. Cl. __, __, 2014 WL 3883329, at *11 (2014) (relying on a "mid-point for the legal services rendered"); *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 58 (2010) (explaining the rationale for applying a mid-point inflation adjustment factor); *see also Infinite Info. Solutions, LLC v. United States*, 94 Fed. Cl. 740, 751-52 (2010).

[4]The government derived this clerical rate by dividing a proposed $50,000 annual salary based on the results of an online search for administrative and legal assistants in www.usa jobs.gov and dividing by 2,087 hours, the number of hours used by the Office of Personnel Management to determine hourly pay rates. Def.'s Opp'n at 16 n.3.

[5]The allowable paralegal rate should be based on the then-prevailing market rate. *See Dalles Irrigation Dist.*, 91 Fed. Cl. at 708 (quoting *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008). The $105 per hour rate was calculated based on the Laffey Matrix, prepared by the United States Attorney's Office for the District of Columbia as "an accurate measure of the

for the 9.4 hours of work that the government identifies as involving tasks customarily performed by non-lawyers, Hyperion may recover at a rate of $105.00 per hour. For the remaining 160.8 hours of work completed by Hyperion's counsel, the court shall apply the adjusted attorney rate of $188.49 per hour.

In sum, Hyperion is awarded compensation for 160.8 attorney hours at the statutory rate as modified by the cost-of-living-adjustment, resulting in a rate of $188.49, and 9.4 paralegal hours at a rate of $105.00, yielding a total of $31,296.19.

*C. Other Expenses*

As part of its EAJA application, Hyperion requests $441.26 for related nontaxable expenses. Pl.'s Mot. at 5. These costs include $419.63 from February 1, 2014 through February 28, 2014 for FedEx Office printing, binding, and overnight deliveries and $21.63 from April 1, 2014 through April 30, 2014 for FedEx overnight deliveries. *Id*. at Attach. 2. The government does not address these costs in its response to Hyperion's application.

Subsection 2412(a) of Title 28 states that, "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(a)(1). In turn, Subsection 2412(d) invokes the statutory exception, providing that "*a court shall award* to a prevailing party other than the United States fees and *other expenses, in addition to any costs awarded pursuant to [28 U.S.C. § 2412(a)]*, incurred by that party in any civil action . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Fees for filing, electronic legal research, transcripts, photocopying, postage, and couriers are consistently held to be recoverable under EAJA. *See, e.g.*, *Jean v. Nelson*, 863 F.2d at 759, 778 (11th Cir. 1988) (allowing recovery for telephone, reasonable travel, postage, and computerized research expenses), *aff'd sub nom. Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154 (1990); *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985); *BCPeabody Construction Servs., Inc. v. United States*, __ Fed. Cl. __, __, 2014 WL 3640776, at *6 (2014) (allowing similar expenses under EAJA, even though the expenses would not be "costs" recoverable under 28 U.S.C. § 1920). Accordingly, Hyperion is entitled to recovery of counsel's printing, binding, and delivery expenses, amounting to $441.26.

**II. Bill of Costs**

Hyperion's Bill of Costs requests reimbursement of the $400.00 filing fee. Costs awarded under RCFC 54(d) are governed by 28 U.S.C. 2412(a), which incorporates 28 U.S.C. § 1920. These costs are statutorily enumerated and precisely construed. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, __U.S. __, __, 132 S. Ct. 1997, 2002-04 (2012); *CBT Flint Partners, LLC v.*

---

prevailing market rates for paralegal services." *United Partition Sys.*, 95 Fed. Cl. at 60 (quoting *First Fed. Sav. & Loan. Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 589 (2009)).

*Return Path, Inc.*, 737 F.3d 1320, 1325-27 (Fed. Cir. 2013).[6] The burden is on the prevailing party to document its recoverable costs. *Dalles Irrigation Dist.*, 91 Fed. Cl. at 710. A $400.00 filing fee is a cost awardable under Section 1920; it is also an allowable "expense" under 28 U.S.C. § 2412(d)(1)(A).

## CONCLUSION

For the reasons stated, Hyperion's application for attorneys' fees and expenses under EAJA is GRANTED IN PART and DENIED IN PART. Hyperion is awarded attorneys' fees of $30,309.19, paralegal fees of $987.00, and expenses of $441.26. Hyperion's Bill of Costs is GRANTED. Hyperion is awarded the filing fee of $400.00. In total, Hyperion is awarded $32,137.45.

The clerk shall enter judgment in accord with this disposition.

It is so ORDERED.

                                                  s/ Charles F. Lettow
                                                Charles F. Lettow
                                                Judge

---

[6] Section 1920 lists the expenses that may be categorized as "costs:"

(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.